MARY M. MARSHALL, plaintiff in error, *vs.* ELIAS S. COHEN, defendant in error.

Where a landlord rents a store in a building which, in the upper stories, was rented out to other tenants, and a water-closet, in the upper part, to which all the tenants had access, by reasons of obstructions thrown in, overflowed and damaged the goods of the tenant in the store:

*Held*, That the landlord was liable for the damages accruing. The fact of the act being caused by the neglect or wantoness of other tenants, when the proof showed previous notice that the closet was in bad condition, by abuse of such tenants to such landlord, the fact that it was in the premise at the time of the renting, and that the plaintiff had access to it, but did not use it, does not change the liability. It is the duty of the landlord to keep the premises free from the consequences arising ordinarily from the use of a water-closet, which becomes a private nuisance, when not properly used and attended to; and if the landlord fails, and from such cause damage ensues, he is liable.

Landlord and Tenant. Nuisance. Tried before Judge CHISOLM. City Court of Savannah. November Term, 1870.

Marshall *vs.* Cohen.

This was an action on the case for damages, with general pleas of denial of the grievances alleged. The plaintiff testified in his own behalf as follows : Some time in the latter part of November, in the year 1869, the defendant leased to him a store and premises situate in the city of Savannah, on the north side of Broughton street, being the ground floor of a building owned and still owned by the defendant, for the sum of $800 00 per annum ; the lease was for no specific time, he then being in the possession of the property as tenant of the defendant ; plaintiff kept a dry goods store in said premises ; on going into his store, on the 4th day of January, 1870, he found that considerable damage had been done to his stock of goods by a leakage from the floors above ; he examined and found that the leakage came from a water-closet in the third story of the building ; finding the damages to be considerable, he called in three of his neighbors, who assessed the value of his goods ; plaintiff did not use the water-closet, but had a separate one in his yard ; a previous leakage had occurred, of which he notified defendant, and she promised to fix it ; witness had been occupying the premises for about one year before he made the second agreement for rent ; the second agreement was a mere verbal letting, not reduced to writing, and without any covenants or conditions of any sort. The water-closet was a nuisance.

The plaintiff closed his case, after proof of *quantum* of damage. The defendant then offered, as a witness, William Wray, who testified as follows : He is a tenant of the defendant, of a portion of the same building occupied by plaintiff ; has been so for some twelve years ; the water-closet was in the building, and in use long before plaintiff occupied any part of the premises ; the water-closet was open and free to all the tenants of the building ; the overflowing of the water was not caused by any fault of the plaintiff, or defect in the works, but from the fact that trash was thrown into the water-closet by the tenants ; it was open day and night, so that any

outsider might have access to it; it was often in a filthy condition.

Robider testified as follows: Is a practical plumber; on the morning of the 4th January, 1870, when informed of the leak that had occurred in the building, went and examined the water-closet; the pipes were in perfectly good order; there was no defect whatever in the water-works; the leak was caused by throwing foreign substances down the water-closet; as soon as these were removed, all difficulty ceased and no further trouble occurred; he had told defendant before that if tenants continued to obstruct the water-closet, it would be necessary to close it altogether, but she said her tenants would object; he advised her to close it up.

Manly Hazzard testified as follows: He examined the water-closet early in the morning of the 4th of January; the water-works were in good order; the pipes were in good order; the trouble arose from things which had been stuffed in the water-closet, which caused the water to overflow; as soon as they were taken out, everything worked right, and there was no further difficulty; the closet was so dark at half-past seven o'clock in the morning that it required a light for its examination.

Williams testified as follows: He examined the water-closet on the morning when the leak occurred; it was filled with trash; he was the carriage driver of the defendant; he never saw a nastier place than the water-closet was; saw plaintiff's store and goods all wet.

The Court charged the jury as follows: "That if they found from the testimony in the case that the defendant was the owner of the whole building, and the plaintiff was the tenant of a part of said building, and that damages accrued through the leakage of the water-closet, that defendant was liable for the damages sustained; that the other tenants of the building were to be considered as the agents of the defendant in obstructing the water-closet, and that defendant was bound to keep the premises in repair."

Marshall *vs.* Cohen.

And the said defendant, by her counsel, then requested the said Judge to charge that the defendant was not liable if they should find that plaintiff had the same right of access to the water closet as any other tenant, which charge the Court refused to give, unless the jury found the damage was occasioned by act of plaintiff.

Defendant's counsel further asked the Court to charge that, the said defendant was not responsible, unless some agreement or covenant was proved by which the defendant had agreed to keep said store and premises in good condition, which said charge the Court refused to give. The jury found for plaintiff. The charge, and refusals to charge are assigned as error.

THOMAS E. LOYD ; A. W. HAMMOND & SON, for plaintiff in error. Landlord not liable for nuisance by tenant : Taylor's L. & T., 95 ; 38 Ga. R., 547. If tenant intended to hold landlord liable for such damages he should have so covenanted, knowing its probability of occurrence.

GEORGE A. MERCER, for defendant. See · Center *vs.* Treadwell, 39 Ga. R., 210 ; R. Code, secs. 2946–2948, 2849 ; Taylor's L. & T., secs. 206, 775 ; 4 Denio's R., 311 ; 1st, 257.

LOCHRANE, Chief Justice.

This was an action brought by a tenant against the landlord to recover damages done to goods on account of an alleged nuisance kept in the upper part of a building, being a water-closet, on account of which water overflowed, and his goods below were injured. The proof shows that the water-closet complained of was upon the premises at the time the party rented the store, and the closet itself was not a nuisance, but convenience for the other tenants living in the upper part of the building. The proof shows that this damage was done, not on account of any defect in the water-closet

Marshall *vs.* Cohen.

or its pipes, etc., but that persons using it threw obstructions into it, and thus caused the overflow and damage. The jury found for the plaintiff, and the case comes before us on the charges and refusals to charge of the Court below. The Judge charged the jury " that if they found, from the testimony in the case, that the defendant was the owner of the whole building, and the plaintiff was a tenant of a part of said building, and that damages accrued through the leakage of the water-closet, the defendant was liable for the damages sustained ; that the other tenants of the building were to be considered as the agents of the defendant in obstructing the water-closet, and that defendant was bound to keep the premises in repair."

The Judge refused to charge that, if the jury found plaintiff had the same access as any other tenant, defendant was not liable, and also that the defendant was not responsible unless some agreement or covenant was proved by which the defendant had agreed to keep said store and premises in good condition.

The only question in the case is the fact whether Mrs. Marshall is liable for the damage done by the overflow of the closet under the facts in this case. It is contended that she is not, because the pipes and fixtures were all in good order, and the damage was the result of no fault of hers ; and the closet being on the premises at the time of renting, that it was not covenanted by her as to its use, and to keep it free from obstructions, and that, this being the act of other tenants, she is not liable.

There is nothing clearer, as a principle of law, than that a party is liable for damages done by himself or his agents in maintaining or keeping up a private nuisance. The evidence in this case shows that this closet was, at times, in very bad order and condition, that it was kept in this condition. Wray, one of the witnesses, says it was open day and night, not only to inmates but to outsiders. Robider, the plumber, advised her to close it up. And it appears, previous to the

damage sued for, there had been a previous leakage, of which she was notified by the plaintiff, and she promised to fix it. The continuance of the closet was for the accommodation of her other tenants who paid her rents, and her continuance of the closet was for a consideration. If she allowed a water-closet for her other tenants to remain in the condition testified to, and from this cause damage did actually occur to the plaintiff, why would she not be liable? Upon legal principles, can she do damage to one tenant by a convenience erected for others, and because these tenants so abuse the use as to cause the damage, protect herself as landlord because of want of covenant? A general principle may be recognized that one who permits a wrong to be done is responsible as he who actually does it. For, in *torts*, all are regarded as principals. This damage was the result of a nuisance kept by the landlord upon the premises. And that it was his own tenants who made it so does not change the charge or remove the liability. One who erects upon his own land anything which, by ignition, burns down the house of one adjoining, is liable. But we need not multiply cases analogous in principle; they are found all through the reports. We need not gather them together, for the extracted principle of liability is constantly recognized. We have examined the case upon the ground that it may be assimilated to that of a house rented to a tenant who violates law by keeping more gunpowder than the law allows, and by this act an explosion takes place which injures another, and, under such facts, the landlord would not be liable, but we see the distinction which marks the cases in the case of a tenant whose *own* act, not by its connection with the landlord, causes the damage. As if, in this case, the tenants had wantonly thrown down buckets of water on the floor above and caused this damage, the landlord would not be liable. But the act was produced by a water-closet which, if not kept clean and in proper order, was, *per se*, a private nuisance, and the ordinary and natural consequences of which was to produce a nuisance in the inherent

character of the thing itself. And when there was proof, as in this case, of this consequence being known to the defendant, by information and by actual notice of a previous leak, we think the reasons of the liability appears, and that this case falls within the rule in *Treadwell vs. Davis*, 39 Georgia Reports. And we therefore affirm the judgment of the Court below.

Judgment affirmed.